UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| AMICA MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL VERNON,<br><br>Defendant. | Case No. 1:14-cv-00235-BLW<br><br>MEMORANDUM DECISION AND ORDER |
|---|---|

# INTRODUCTION

The Court has before it cross motions for summary judgment. The motions were argued on March 16, 2015, and taken under advisement. For the reasons expressed below, the Court will grant the Plaintiff's Motion for Summary Judgment, and deny the Defendant's Motion for Summary Judgment.

# BACKGROUND

Defendant Russell Vernon and now deceased Roberta McIntire worked at Century Link in Boise, Idaho. The two employees rarely interacted with each other. Several

months before Vernon retired in May 2011, and while at work in the break room, Vernon asked Roberta how she made her coffee. She responded, "What f*cking business is that of yours?" *Def's Dep.*, Dkt. 17, Ex. 3, at 21. The two co-workers had little further interaction until December 2011, when Vernon mailed an anonymous card with an enclosed letter to Roberta. The front of the card read, "F*** You, You F***ing F***." The letter inside the card contained four paragraphs of insults, some of which read: "It goes without saying that you undoubtedly must know by now how much you are disliked by the techs here…;" "Hopefully someday R(redacted) will wise up and dump you for something worth having. It's funny how many of us like R(redacted) yet would laugh ourselves silly if you were to get run over by a train;" and "Every year we hope that this will be your last one here but every year you stay." *Pl.'s Compl.*, Dkt. 1, Ex. 1, ¶ 29–32.

Roberta committed suicide five days after receiving the card and enclosed letter. Roberta's Estate and her mother, Jessica Grable, sued Vernon in state court for negligence, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress. Vernon sought coverage under his homeowner's insurance policy with Amica Mutual Insurance Company. Specifically, he demanded that Amica defend the underlying action and indemnify any judgment rendered against him. In response, Amica filed a complaint, seeking a declaration that Amica is not under a duty to defend or indemnify Vernon. This Court is now faced with cross motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no

material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

1. **Idaho Supreme Court Precedent on Insurance Contracts**

The Idaho Supreme Court has made clear that the question of whether an insurance policy is ambiguous is a question of law for the court to determine. *Farm Bureau Mut. Ins. Co. Idaho v. Schrock,* 252 P.3d 98, 102 (Idaho 2011) (citing *Cherry v. Coregis Ins. Co.,* 204 P.3d 522, 524 (Idaho 2009)). A court must ask whether a policy is reasonably subject to conflicting interpretations in order to determine whether it is

ambiguous. *Id.* If the language of the policy is clear and unambiguous, then it will be given its ordinary and plain meaning. *Id.*

If the language is unclear and ambiguous, "all ambiguities in an insurance policy are to be resolved against the insurer." *Cherry,* 204 P.3d at 526. Moreover, the Court interprets the Idaho Supreme Court precedent to require that the Court, not a jury, resolve an ambiguity in favor of the insured. The only issues which should be left to a jury for interpretation are factual determinations that inform the interpretation of an ambiguous term. *Arreguin v. Farmers Ins. Co. Of Idaho,* 180 P.3d 498, 502 (Idaho 2008).

**2.     Duty to Defend and Duty to Indemnify**

Amica only has a duty to defend and a duty to indemnify Vernon under the terms of his homeowner's insurance policy if, "a claim is made or a suit is brought against [Vernon] for damages because of bodily injury… caused by an occurrence to which this coverage applies." Dkt. 17, Ex. 2, at 16. The policy defines "bodily injury" as "bodily harm, sickness or disease, including required care, loss of services and death that results." *Id.* at 1. Additionally, the policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy in: bodily injury." *Id.* at 2.

Much can be said about Vernon's conduct. However, one thing that cannot be said is that his conduct was accidental. Although coverage might well be denied on that ground, the Court finds it unnecessary to base its decision on that ground because the mental abuse exclusion under the policy is so clearly applicable – and dispositive.

### 3.  Mental Abuse Exclusion

Amica's policy contains an exclusion for bodily injuries arising out of mental abuse. Dkt. 17, Ex. 2, at 18. The policy indicates that coverage does not extend to "[b]odily injury…arising out of…mental abuse." *Id.* [1]

The policy does not define "mental abuse," and no Idaho or Ninth Circuit case law interprets the term "mental abuse" in the context of insurance policies. *Id.* Black's Law Dictionary provides some insight with its definition of "emotional abuse": "Physical or verbal abuse that causes or could cause serious emotional injury. – Also termed *mental abuse*; *psychological abuse*." BLACK'S LAW DICTIONARY 12 (10th ed. 2014). Black's Law further defines "verbal abuse" as "[e]motional abuse inflicted by one person on another by means of words…in a way that causes distress, fear, or similar emotions. Verbal abuse may include name-calling, insults, threatening gestures, excessive and unfounded criticism, humiliation, and denigration." *Id.*

Additionally, the Eighth Circuit used Black's Law to interpret a similar policy which excluded coverage for personal injuries arising from mental abuse. *Heacker v. Safeco Ins. Co. of America*, 676 F.3d 724, 729 (8th Cir. 2012). This Court recognizes that

---

[1] The Court need not determine whether the alleged emotional distress injuries constitute bodily injuries. Indeed, if the emotional distress injuries do not constitute bodily injuries, coverage does not extend to these injuries. In the alternative, if the emotional distress injuries do constitute bodily injuries, the mental abuse exclusion, as explained below, precludes coverage for such injuries.

the facts in *Heacker* are distinguishable from the facts here. Indeed, *Heacker* dealt with harassing and defaming conduct that lasted for almost five years. *Id.* at 726. This case involves one specific instance of alleged misconduct. Still, the Court finds the *Heacker* court provides a helpful analysis regarding the definition of "mental abuse" – "A reasonably prudent insured would discern that mental abuse is mental maltreatment, often resulting in mental or emotional injury." *Id.* at 729 (citing BLACK'S LAW DICTIONARY 10 (8th ed. 2004)).

It is unimaginable that sending a card to someone which begins, "F*** You, You F***king F***," and then continues on with an additional four paragraphs of vicious and personal insults, could be regarded as anything but "mental maltreatment." The card falls within any reasonable definition of mental abuse. If sending a card and enclosed letter which reads "F*** You, You F***ing F***," "[i]t goes without saying that you undoubtedly must know by now how much you are disliked by the techs here…," "[h]opefully someday R(redacted) will wise up and dump you for something worth having. It's funny how many of us like R(redacted) yet would laugh ourselves silly if you were to get run over by a train," and "[e]very year we hope that this will be your last one here but every year you stay" does not constitute mental abuse, then nothing does. *Pl.'s Compl.*, Dkt. 1, Ex. 1, ¶ 29–32.

The Court is not persuaded by Vernon's argument that the card and letter constitute a "social interaction." *Def. Mem. in Supp. of Cross-Mot.*, Dkt. 31-1, p. 15. Vernon inflicted these insults upon Roberta McIntire in a manner which ultimately and

understandably caused at least some level of emotional distress. Such verbal abuse could have (and perhaps did) cause serious emotional injury. As such, the mental abuse exclusion precludes coverage.

## ORDER

IT IS ORDERED:

1. Plaintiff's Motion for Summary Judgment (Dkt. 16) is **GRANTED**.

2. Defendant's Motion for Summary Judgment (Dkt. 31) is **DENIED**.

3. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: April 17, 2015

B. Lynn Winmill
Chief Judge
United States District Court